IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :

  v.                         :          CRIM. NO.  26-MJ-495

ANTON BILSKI             :

### GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

The United States of America, by and through David Metcalf, United States Attorney for the Eastern District of Pennsylvania, and Justin Oshana, Assistant United States Attorney for the District, hereby moves this Honorable Court to detain the defendant prior to trial because there are no conditions or combination of conditions that can reasonably assure the safety of the community or mitigate the risk of flight.

For years, beginning in 2023 and continuing until February 2026, the defendant collected and distributed sexually explicit images and videos of children being raped, sexually abused, and exploited. As a result of his criminal conduct, the defendant was charged by complaint and warrant with receipt of child pornography, a crime that carries a statutory maximum of 20 years' imprisonment and a mandatory minimum sentence of 5 years' imprisonment.  His charge also carries a presumption that no combination of conditions will assure his appearance or the safety of the community, and the Government moves this Court to detain him pending trial.

1

A.    **FACTS**

In support of this motion, the Government makes the following representations and proposed findings of fact:

**Probable Cause and the Evidence in this Case**

There is probable cause to believe, based on the complaint and warrant signed by the Honorable Pamela A. Carlos on March 20, 2026, that the defendant was in receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2).  As a result, there is a rebuttable presumption, pursuant to 18 U.S.C. § 3142(e)(3)(E), that no condition or combination of conditions will assure the safety of the community or the defendant's appearance in court.

*Child Pornography Crimes in the Complaint*

The evidence in this case is strong.  In September 2025, HSI began investigating a lead from a European-partner country regarding an Instagram user "Abilski26" (later identified as defendant Anton BILSKI) exchanging child sexual abuse material ("CSAM"), or child pornography, via Instagram with a subject (hereinafter "Subject 1") being investigated by the European-partner country.  The Instagram messages were screen-recorded and provided to HSI. The screen-recorded messages between BILSKI and Subject 1 occurred between approximately May 18, 2023 and May 27, 2023.  For example, on May 18, 2023, the following exchange occurred:

| Abilski26 | Subject 1 |
|---|---|
| We can really cute | |
| But I'll send you more stuff later tonight. We can send each other pics too if that's something you like? | |
| | Hi |
| Hey | |
| | You have more stuff you said |

2

| What would you like. I have evening plans coming up | |
|---|---|
| | Some videos |
| Ok | |

"Abilski26" then sent a video file, which Subject 1 opened and viewed. The video depicted a pubescent aged minor boy. The boy was nude and appeared to be filming himself. The camera was held by the boy and was focused on his genitalia and anus. During the video, the boy repeatedly inserted a finger into his anus. Within the recorded message, a profile picture depicting an adult white male wearing dark colored glasses was associated with the "abilski26" Instagram account.

On or about May 27, 2023 "abilski26" distributed two video files to Subject 1. Subject 1 replied, "That's a men with kid, i dont want men just kids." "Abilski26" then sent another video file which Subject 1 opened and viewed. The video depicted two prepubescent aged minor boys. Both boys appeared to be nude. During the video, one of the boys performed oral intercourse on the other boy. Within the recorded message, a profile picture depicting an adult white male wearing dark colored glasses was associated with the "abilski26" Instagram account.

A review of law enforcement databases for "Anton William Bilski" revealed that he is closely associated with an email address of abilski231@gmail.com.  Through investigation, HSI determined that the email address abilski231@gmail.com was associated with an account on the cloud-based file storage and sharing platform Mega, or Mega NZ.[1] Through investigation, HSI learned that the Mega account associated with abilski231@gmail.com was created on March 21,

---

[1] Mega is a user-controlled, encrypted, could-based data storage and file hosting service offered by Mega Limited, an Auckland, New Zealand-based company, which is known for its end-to-end encryption security feature. The service is offered primarily through web-based apps.  Mega mobile apps are also available for Android and iOS.

2023, had a self-reported name of "Anthony B," contained 196 files, and was suspended by Mega for an emergency takedown ("ETD").   A Mega link, created on April 18, 2023, was reported twice as an ETD.  The first report occurred on June 7, 2023, and the second report occurred on July 30, 2024. After the first reporting of the ETD, Mega suspended the account.

The ETD link contained 196 files (the total content of the Mega account associated with abilski231@gmail.com), including approximately 180+ files depicting CSAM.  These included depictions of prepubescent children engaged in sexually explicit conduct. The videos depict prepubescent and pubescent boys being orally and anally raped by adult males, and engaged in oral sex and acts of masturbation, and lascivious exhibition of their genitals and anuses. Although the Mega account was suspended after the first ETD report, additional login attempts occurred. The most recent login attempt occurred on July 2, 2025, from an IP (internet protocol) address associated with the defendant's residence in Landenberg, Pennsylvania.

Additionally, a review of the defendant's PayPal transactional data confirmed at least nine payments made by the defendant to suspected CSAM vendors between October 2, 2024, and January 1, 2025, totaling more than $500.

On March 17, 2026, federal search warrant 26-mj-430 was authorized by the Honorable Pamela A. Carlos, United States Magistrate Judge, for the defendant's residence in Landenberg, Pennsylvania and his person.  On March 20, 2026, HSI agents and other law enforcement officers executed the search warrant. The defendant was home at the time. When law enforcement announced their presence, the defendant locked the door to the room he was in and deleted the Telegram app from his phone.  The defendant agreed to be interviewed by HSI agents, and his interview was video-recorded. In summary, the defendant admitted to operating the Instagram account abilski26, described above, and the Mega account associated with

4

abilski231@gmail.com, also described above. The defendant knew that his Mega account was suspended because of child pornography activity. The defendant admitted to using PayPal and other third-party payment services to purchase thousands of dollars' worth of CSAM on multiple platforms, including Telegram, and using Gmail address abilski231@gmail.com to exchange CSAM. The defendant admitted to using a Telegram account to exchange CSAM and gave consent for law enforcement to re-install and then access the Telegram account on his Apple iPhone. HSI agents did so and, among other evidence, located a message thread with another Telegram user, in which the defendant received videos of CSAM and then maintained them as part of his CSAM collection on the app.  For example, via Telegram, the defendant received the following videos, which form the basis for the receipt of child pornography charge in Count One of the complaint:

    a.    On or about February 28, 2026, the defendant received a 50-second-long video, which depicted a nude boy, approximately 8-10 years old, using his hand to masturbate an adult male and then performing oral sex on the adult male.

    b.    On or about February 17, 2026, the defendant received a 55-second-long video, which depicted a prepubescent girl, approximately 10-12 years old, sitting on the floor exposing her genitals and masturbating.

HSI seized approximately 13 electronic devices, including the defendant's Apple iPhone, laptop computer, a custom-built computer tower, a tablet, and several thumb drives. The forensic review of those devices is ongoing and additional charges are expected.

*Additional Crimes Discovered Involving the Defendant's Sexual Abuse of Minors*

The investigation has revealed numerous additional – and more serious - crimes involving the defendant's sexual abuse and exploitation of multiple minor boys, including:

- The defendant's sexual abuse of one minor boy in 2021 whom he met on Snapchat, then induced to manufacture and send CSAM to the defendant over Snapchat, eventually traveled to meet up with the child for sex, and engaged in oral intercourse and masturbation;

- The defendant's manufacture of CSAM of multiple minor boys (who served as volunteers in the Avondale Fire Company, where the defendant also was employed for years), through surreptitious recordings believed to have been made by a camera the defendant concealed within the Avondale Fire Company;

- Surreptitious photographs and video of other minor boys to whom he had access, whose images he comingled amongst his CSAM collection. The defendant admitted his sexual attraction to these specific boys and advised agents that he masturbated to their images.

The investigation of these additional criminal offenses is ongoing by law enforcement and is expected to result in additional charges, both in the federal system and potentially in state court as well.

### Maximum Penalties

If convicted of just the one charge of receipt of child pornography in the complaint and warrant, the defendant faces 20 years' imprisonment with a 5-year mandatory minimum term, 5 years up to a lifetime of supervised release, and numerous mandatory penalties. A preliminary estimation of the defendant's sentencing guidelines calls for a sentence in the range of 235 to

6

240 months' incarceration, limited by the statutory maximum, and which includes a 5 year mandatory minimum term of incarceration on just this one charge.

The investigation of the defendant's child exploitation activities is ongoing, and he may very well be charged with additional offenses which would increase the maximum and mandatory minimum penalties. If charged with manufacture of child pornography, in violation of 18 U.S.C. § 2251 for the additional criminal offenses which are still being investigated, he faces a statutory maximum of 30 years and a mandatory minimum term of 15 years' incarceration on each count, and an estimated guideline range of life imprisonment.

### Criminal History and Background

At the time the defendant committed the child exploitation crimes described above, he was employed as an emergency 911 dispatcher in Chester County. He also served as a Lieutenant in the Avondale Fire Company. As described above, the defendant used his position in the fire department to secretly photograph minors. The defendant was terminated from his position as an emergency dispatcher following his arrest. His discharge from the Avondale Fire Company is also pending.

Significantly, he had previous opportunities to cease his criminal activities, none of which served to deter him as he continued to involve himself in child exploitation crimes. His social media accounts were shut down on a number of occasions, but the defendant simply created new accounts and engaging in these child crimes. Law enforcement also communicated with him directly in 2023 regarding his sexual abuse of a minor, but the defendant denied any criminal wrongdoing and continued to engage – for years – in additional child sexual abuse and exploitation.

**B.**    **LEGAL ARGUMENT**

7

Pursuant to 18 U.S.C. § 3142(e)(3)(E), there is a rebuttable presumption in favor of detention for individuals who, like this defendant, are charged with violating 18 U.S.C. § 2252(a)(2).  The United States Supreme Court recognized the severity of child pornography offenses, stating that "[c]hild pornography harms and debases the most defenseless of our citizens." *United States v. Williams*, 553 U.S. 285, 307 (2008). Likewise, the United States Court of Appeals for the Third Circuit has noted that "congressional findings ... repeatedly stress that child pornography 'is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved.'" *United States v. MacEwan*, 445 F.3d 237, 249 (3d Cir. 2006).  "[T]he mere existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." *Id.* at 250.

The presumption for detention for these crimes is based, in part, on the Congressional determination that "sex offenders and child molesters are four times more likely than other violent criminals to recommit their crimes." *Comments of Chairman Lemar Smith*, H.R. Rep. 5422; *See also United States v. Farris*, 2008 WL 1944131 (W.D. Pa. 2008).  The dangers surrounding these types of offenses are widely recognized.  *See McKune v. Lile*, 536 U.S. 24, 33 (2002) (emphasizing Department of Justice and Federal Bureau of Investigation statistics reflecting substantially increased likelihood of repeat arrests for sex offenders); *United States v. Pugh*, 515 F.3d 1179, 1199 (11th Cir.2008) (discussing influence of sexual offender recidivism in passage of various provisions in the PROTECT Act); *Report of Chairman Sensenbrenner*, H.R. Rep. 107-527, on amendment of 18 U.S.C. § 3583 (expressing congressional determination that "sex offenders and child molesters are four times more likely than other violent criminals to

recommit their crimes" and referencing studies and findings documenting (1) a significantly higher rate of recidivism among sexual predators, (2) the number of undetected offenses which such individuals actually commit and (3) the psychological impact such offenses have on the victims); *Doe v. Bredesen*, 507 F.3d 998, 1006 (6th Cir.2007) (noting the legislative findings in numerous states passing sex offender registration systems reflecting the "undisputed high risk of recidivism" by such sex offenders).

To rebut this initial presumption, the burden is on the defendant to produce some credible evidence that he will appear and will not present a threat to the community. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). Even if he satisfies his initial burden of production to rebut the presumption against release, it does not completely eliminate the presumption favoring detention from further consideration; rather, it remains a factor to be considered among those weighed by the Court.  However, rebuttal of the initial presumption against detention shifts the burden to the Government to demonstrate by clear and convincing evidence that the defendant is a danger to the community, and/or by the lesser standard of a preponderance of the evidence, that he is a risk of flight. *See United States v. Perry*, 788 F.2d 100, 115 (3rd Cir. 1986) ("The clear and convincing standard does not even operate until the defendant has come forward with some evidence of lack of dangerousness.").

Here, the defendant poses a clear danger to children in the community, and there is no condition or combination of conditions that could assure the safety of the community if he is released. The defendant continued to purchase child pornography after having his accounts blocked and after being confronted by law enforcement. Even a condition that prohibits the defendant from having contact with minor children would not adequately assure the safety of children in the community if the defendant is released because there is no way to effectively

monitor his compliance with such a condition.  Only a 24-hour watch by the Bureau of Prisons can ensure the safety of the community and children, in particular, from the defendant.

Furthermore, there is no way to effectively monitor this defendant's online access to child pornography, for the following reasons:

(1)     Access to the internet is possible through desktop and laptop computers, cell phones, iPods, iPads, and even gaming devices.  There is no way to prevent the defendant from purchasing or using an Internet accessible device without the knowledge of Pretrial Services.

(2)     Storage devices can range in size, down to the size of a postage stamp, making it impossible for a Pretrial Services officer to locate.  There is no way to prevent the defendant from obtaining any storage medium, and no amount of supervision that would detect it in his home or elsewhere.

(3)     There is no way to monitor whether the defendant will access the Internet – and child pornography and/or communication with minors about sexual activity – using a public library's computers, using family members' or friends' electronic equipment, or Internet access at any other location, given that there is free WiFi access from any number of public places.

(4)     Even if this Court were to order that computer monitoring software be installed on the defendant's home computer(s), there would be no way to detect if he were to subvert the computer monitoring software by simply inserting a device with its own operating system into the computer being monitored, thereby bypassing the monitoring software altogether.  The defendant's activities would be completely undetected, and the Pretrial Services officer – and this Court – would instead be issued a report that the defendant is in "compliance."

It is difficult to conceive of any supervision that would detect the defendant's criminal activities.  Pre-Trial Services is limited to inspection of items that are in plain view of the officers.  Nor is Pretrial Services permitted to seize electronic evidence.  "The ubiquitous presence of the internet and the all-encompassing nature of the information it contains are too obvious to require extensive citation or discussion." *United States v. Schenberger*, 498 F.Supp.2d 738, 745 (D. N.J. 2007) ("This Court is not persuaded that meaningful assurances can be given that defendant's access to the internet can be stopped.  Even if the defendant could

somehow be prohibited from creating, viewing, or exchanging images of child pornography, it is difficult to conceive of measures that could confidently assure that defendant would not communicate with others and encourage the distribution of child pornography and related illicit activities."); *See also United States v. Voelker*, 489 F.3d 139, 145 (3d Cir.2007) (finding detention appropriate for a defendant charged with distributing and receiving child pornography based on the dangers associated with child pornography offenses in general and the difficulty to effectively monitor given the accessibility of the Internet.)

Prison is a certainty for this defendant if convicted of these child exploitation crimes– he faces a mandatory minimum of 5 years' imprisonment, and sentencing Guidelines that call for a far higher sentence.  The anticipation of this severe sentence and the ongoing investigation, which may very well result in additional charges, give him every incentive to flee, knowing that he will spend a significant period of time in prison, and makes him even more of a danger to others in the community, knowing that his release on bail may be the last time he is free in many years.

## C.    **CONCLUSION**

For all of these reasons, the defendant cannot rebut the presumption under 18 U.S.C. § 3142(f)(1)(E) that no condition or combination of conditions will reasonably assure his presence for trial or the safety of the community.

WHEREFORE, the government respectfully requests the Court to detain this defendant prior to trial.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s/ Justin Oshana*
JUSTIN OSHANA
Assistant United States Attorney

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA          :

    v.                                                   :          **CRIM. NO.  26-MJ-495**

ANTON BILSKI                              :

### PRETRIAL DETENTION ORDER

AND NOW, this _____ day of March, 2026, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

    (a)    the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

    (b)    the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e) and (f)(1)(E).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) and (f)(1)(E) because:

    (a)    There is probable cause to believe, based on the complaint and warrant signed by the Honorable Pamela A. Carlos on March 20, 2026, that the defendant was in receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2).  As a result, there is a rebuttable

1

presumption, pursuant to 18 U.S.C. § 3142(e)(3)(E), that no condition or combination of conditions will assure the safety of the community or the defendant's appearance in court.

(b)      The evidence in this case is strong.  In September 2025, HSI began investigating a lead from a European-partner country regarding an Instagram user "Abilski26" (later identified as the defendant) exchanging child sexual abuse material ("CSAM"), or child pornography, via Instagram with a subject (hereinafter "Subject 1") being investigated by the European-partner country.  The Instagram messages were screen-recorded and provided to HSI.  The screen-recorded messages between the defendant and Subject 1 occurred between approximately May 18, 2023 and May 27, 2023.  For example, on May 18, 2023, the following exchange occurred:

| Abilski26 | Subject 1 |
|---|---|
| We can really cute | |
| But I'll send you more stuff later tonight. We can send each other pics too if that's something you like? | |
| | Hi |
| Hey | |
| | You have more stuff you said |
| What would you like. I have evening plans coming up | |
| | Some videos |
| Ok | |

"abilski26" then sent a video file, which Subject 1 opened and viewed. The video depicted a pubescent aged minor boy. The boy was nude and appeared to be filming himself. The camera was held by the boy and was focused on his genitalia and anus. During the video, the boy repeatedly inserted a finger into his anus. Within the recorded message, a profile picture depicting an adult white male wearing dark colored glasses was associated with the "abilski26" Instagram account.

On or about May 27, 2023 "abilski26" sent two video files to Subject 1. Subject 1 replied, "That's a men with kid, i dont want men just kids." "abilski26" then sent another video file, which Subject 1 opened and viewed. The video depicted two prepubescent aged minor boys. Both boys appeared to be nude. During the video, one of the boys performed oral intercourse on the other boy. Within the recorded message, a profile picture depicting an adult white male wearing dark colored glasses was associated with the "abilski26" Instagram account.

A review of law enforcement databases for "Anton William Bilski" revealed that he is closely associated with an email address of abilski231@gmail.com.  Through investigation, HSI determined that the email address abilski231@gmail.com was associated with an account on the cloud-based file storage and sharing platform Mega, or Mega NZ.[2] Through investigation, HSI learned that the Mega account associated with abilski231@gmail.com was created on March 21, 2023, had a self-reported name of "Anthony B," contained 196 files, and was suspended by Mega for an emergency takedown ("ETD").  A Mega link, created on April 18, 2023, was reported twice as an ETD.  The first report occurred on June 7, 2023, and the second report occurred on July 30, 2024. After the first reporting of the ETD, Mega suspended the account.

The ETD link contained 196 files (the total content of the Mega account associated with abilski231@gmail.com), including approximately 180+ files depicting CSAM.  These included depictions of prepubescent children engaged in sexually explicit conduct.  I reviewed the files and examples of some videos are described below:

> a. A video file (video_1531328206259[Q45].mp4), approximately 28

---

[2] Mega is a user-controlled, encrypted, could-based data storage and file hosting service offered by Mega Limited, an Auckland, New Zealand-based company, which is known for its end-to-end encryption security feature. The service is offered primarily through web-based apps.  Mega mobile apps are also available for Android and iOS.

3

seconds in length, depicts a prepubescent male who appears to be approximately 10-12 year of age, wearing a white shirt and laying on his back. He is naked from the waist down. The male child's penis and genitalia are exposed. An adult male subject with an erect penis penetrates the child's anus and performs anal sex on the child.

b.    A video file (BrC1832-SO4-307- Duo and Group – 13yo fucks younger friend and makes him suck then cums on his dick.mp4), approximately 39:55 in length, depicts two young male subjects engaged in sexual activity on what appears to be a padded couch or chair. The one young male child wearing a blue shirt and has dark brown hair. He appears to be approximately 12-13 years of age. The other male child is wearing a red shirt and appears to be 10-11 years of age. During the video, the red shirted pre-pubescent child masturbates the erect penis of the blue shirted male subject, performs oral sex on the blue shirt boy's erect penis and the blue shirt boy attempts to have anal sex with the red shirt child.

Although the Mega account was suspended after the first ETD report, additional login attempts occurred. The most recent login attempt occurred on July 2, 2025 from an IP (internet protocol) address associated with the defendant's residence in Landenberg, Pennsylvania.

During the investigation of the defendant, I learned that PayPal reported the defendant multiple times for sending money via the PayPal platform to purchase suspected CSAM from multiple vendors. Based on my review of the defendant's PayPal transactional data, I identified at least nine payments made by the defendant to suspected CSAM vendors between October 2, 2024 and January 1, 2025, totaling more than $500.

On March 17, 2026, federal search warrant 26-mj-430 was authorized by the Honorable Pamela A. Carlos, United States Magistrate Judge, for the defendant's residence in Landenberg, Pennsylvania and his person.

4

On March 20, 2026, HSI agents and other law enforcement officers executed the search warrant. The defendant was home at the time. When law enforcement announced their presence, the defendant locked the door to the room he was in and deleted the Telegram app from his phone.  The defendant agreed to be interviewed by HSI agents, and his interview was video-recorded. In summary, the defendant admitted to operating the Instagram account abilski26, described above, and the Mega account associated with abilski231@gmail.com, also described above. The defendant knew that his Mega account was suspended because of child pornography activity. The defendant admitted to using PayPal and other third-party payment services to purchase thousands of dollars' worth of CSAM on multiple platforms, including Telegram, and using Gmail address abilski231@gmail.com to exchange CSAM. The defendant admitted to using a Telegram account to exchange CSAM and gave consent for law enforcement to re-add and then access the Telegram account on his Apple iPhone. HSI agents did so and, among other evidence, located a message thread with another Telegram user, in which the defendant received videos of CSAM.  For example, via Telegram, the defendant received the following videos:

a.     On or about February 28, 2026, the defendant received a 50-second-long video, which depicted a nude boy, approximately 8-10 years old, using his hand to masturbate an adult male and then performing oral sex on the adult male.

b.     On or about February 17, 2026, the defendant received a 55-second-long video, which depicted a prepubescent girl, approximately 10-12 years old, sitting on the floor exposing her genitals and masturbating.

HSI seized approximately 13 electronic devices, including the defendant's Apple iPhone, laptop computer, a custom-built computer tower, a tablet, and several thumb drives. The forensic review of those devices is ongoing.

In February 2023, the Chester County Regional Police Department received a report of child sexual abuse through ChildLine, the Pennsylvania Department of Human Services' child abuse reporting system. The victim, D.G., told detectives that the defendant contacted him via Snapchat in 2021, when D.G. was 15 years old.  Over a period of approximately two weeks the defendant sent D.G. nude photographs of himself and successfully solicited D.G. to send nude photographs of himself.  D.G. also told detectives that he met the defendant, who told him that he was 18 years old (the defendant was, in fact, 20 years old at the time) and performed oral sex on the defendant in a car parked in the area of the defendant's residence.  D.G. also told detectives that the defendant showed him pictures of other minors who he recognized because he went to school with them, including images of the minors nude.  The photos appeared to be taken without the minors' knowledge. D.G. told detectives that the defendant interacted with some of the other minors because they were volunteers at the Avondale Fire Company, where the defendant was also a volunteer.

(c)   If convicted on the receipt of child pornography charge in the complaint, the defendant faces up to 20 years' incarceration with a 5-year mandatory minimum term, 5 years up to a lifetime of supervised release, and numerous financial penalties.

(d)   If convicted, the defendant faces a significant and certain incarceration, having never served a prison sentence.  This provides ample incentive to flee, as well as demonstrates his danger to others in the community.

(e)   The strength and nature of the case against the defendant, combined with the fact that the defendant will be incarcerated for a mandatory minimum term of imprisonment of 5 years and a maximum of 20 years, establishes the defendant's danger to the community and increases the high risk that the defendant will not appear as required by the Court.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

_____
HONORABLE CAROLINE CINQUANTO
United States Magistrate Court Judge

7

## CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion for Pretrial Detention, and

Proposed Order was served by e-filing and email on the following defense counsel:

Michael McCrossen, Esquire
Michael_McCrossen@fd.org

*/s/ Justin Oshana*
JUSTIN OSHANA
Assistant United States Attorney

Date: March 22, 2026.